People of the State of Illinois, Plaintiff-Appellee, v. Charles R. Gore, Defendant-Appellant.

Gen. No. 64–72.

Third District.

November 16, 1965.

John E. Walsh, of Rock Island, for appellant.

William G. Clark, Attorney General, of Springfield (Richard Stengel, State's Attorney, of Rock Island, and Peter C. Fieweger, Assistant State's Attorney, of counsel), for appellee.

ALLOY, P. J.

Defendant, Charles R. Gore, was tried and found guilty by a verdict of a jury, of burglary, and was thereafter sentenced by the Circuit Court of Rock Island County to a term of one to seven years. On appeal in this court, Defendant sets forth a number of grounds for reversal which will be considered in the course of the opinion.

The evidence presented by the People discloses that Defendant Charles R. Gore was indicted on March 19, 1964, by the grand jury along with six other defendants for the burglary of a drug store building known as Doden's Drug Store in Rock Island on January 1, 1964. An employee of the store had locked the doors and safe prior to closing the drug store but on January 2, 1964, it was found that the back door of the drug store had been forced open. That door had not been used previously for years and is adjacent to a neighbor's private driveway. There were marks showing the use of tools and splintering on the door and plywood had been forced from its framework. Merchandise and other articles piled behind the door were in a state of disarray. A safe belonging to the drug store was taken from the store with its contents consisting of checks, cash, money orders, fishing and hunting licenses, and a small amount of

311

medicine. Checks and cash totaled $2,308.21, none of which was recovered, and there were about 70 or 71 blank money orders missing.

On trial of the cause, the People introduced as an exhibit a check protector machine which was identified as having been taken from the drug store. The machine was issued by Traveler's Express Company and had a slug number in it which was the Doden agency number. Other exhibits admitted in evidence consisted of money orders in the amount of $100 each taken from Doden's and written in at least two cases by certain other individuals indicted for the burglary (not including the Defendant in this cause). One of the participants, Gilbert Banks, Jr., testified that he came to Rock Island on December 24, 1963, bringing with him one other participant (Goss) and that he had a conversation with certain other participants in the burglary (Bell, Huff, Crim, Goss) and the Defendant Charles R. Gore. At that conversation, at which Gore was present, it was stated that four of the participants not including Gore were to go down to the drug store, and in another conversation Defendant Gore said he would go down to the drug store and have a person move a car out of a driveway so that Banks could drive another participant's (Haywood's) car up the driveway in order to load the safe from Doden's into it. The car was actually driven to the drug store as planned.

Earlier in the evening Banks drove past the drug store with Defendant Gore in the automobile, at which time Defendant Gore showed Banks the location of the drug store. Banks testified that he backed the car into the driveway and then helped three other participants (not including Gore) load the safe from the drug store into the car and then drove the car with the safe in it to Haywood's house. Shortly after he arrived there, Defendant Gore and Bell also arrived there. They then unloaded the safe and took it into the house and proceeded

312

to open it. Gore worked with Goss in opening the safe with a hammer, chisel and crowbar. There was money, money orders and medicines in the safe.

All of the participants including Gore were present when the money was divided and took part in the distribution of the money. After this the safe was dumped in an alley. Banks also stated that he first saw the check protector machine referred to in Defendant Gore's house after dumping off the safe. All participants were present at that time including Defendant Gore and one of the other participants made out certain checks, which were introduced in evidence in the sum of $100 each, with the check protector. Banks testified he next saw the check protector at Rebecca Gore's home after that date; that Defendant Gore told him it was there and how to get there and that he picked it up, washed it and threw it along a railroad track in Rock Island. About 1:00 a. m. on January 1, 1964, Defendant Gore and five other participants left for Chicago in an automobile driven by Defendant Gore. At a motel where they registered, money orders which had been prepared were filled in by two of the other participants.

The record shows that while Gore participated in the conversations preceding the burglary and had an automobile removed from the driveway so that the car driven by one of the participants could use the driveway, Gore did not actually participate in breaking doors and did not enter the drug store. He did, however, participate in the removal of the contents of the safe. Another participant, Columbus Goss, refused to testify in the cause on the ground that it might tend to incriminate him.

Rebecca Gore, wife of Defendant's nephew, identified the check protector which Charles Gore brought to her house in two paper bags shortly after the burglary. Around January 4 or 5, 1964, Defendant Gore picked her up after work and told her that he had this check protector from Doden's at her house and wanted her to get

313

rid of it. He stated that he had brought it to her house because they didn't know anything about her and he'd send two men to pick it up. He asked her to wash off all the fingerprints and told her how much money he could make with it. That same night, Banks, who similarly testified in the cause, came to Rebecca Gore's house, washed the machine and took it away. There was "bad blood" between Rebecca Gore and Charles Gore which developed after the check machine incident and by reason of her being subpoenaed to testify against him.

Another witness, Arnold Barnett, who had been convicted, previously, of robbery and burglary, went to Cleveland with Defendant in December 1963. He returned to Rock Island with the Defendant and a participant in the burglary named Columbus Goss. A few weeks before the Doden burglary, he talked with Defendant Gore of having been convicted of burglary and stated he could get in the drug store if Gore wanted him to and they discussed ways of getting in. He told Defendant Gore he knew nothing about opening a safe and Gore stated that he could get someone to open the safe. A few days before the burglary, Barnett was in Doden's with Defendant during business hours when Gore pointed to an area and told him that was where the safe was. Another witness testified that on December 30, 1963, in the presence of a number of the participants in the burglary, she heard Defendant Gore say: "We will do the job on New Year's Day on 12th Street." And another participant stated: "and then we'll jet from town to town, Chicago, Cleveland, Columbus, Detroit and New York." Another participant, George Bell, who had pleaded guilty stated essentially the same as the participant referred to although he did not help open the safe and didn't see Gore do this either.

Each of the persons indicted for the burglary originally entered a plea of not guilty. Defendant Charles R. Gore was granted a severance from the other defendants and

314

Tyson Haywood was granted immunity on the People's own motion. At the first trial of Defendant Gore which was concluded on July 29, 1964, a verdict of guilty was returned. The court, however, declared a mistrial on the ground that a deal in fact had been made between the State and the accomplices Goss and Banks for certain penalties if the accomplices would testify against Defendant Gore and such witnesses had denied in that trial that such a deal was made. An accomplice named Bell was granted probation.

■ An attorney who now acts for Defendant Gore entered his appearance as substitute counsel on September 21, 1964, at which time Defendant Gore made a request for a continuance of 30 days. An attorney who had represented Gore had moved to withdraw by reason of the failure of Defendant to compensate him for services in the first trial but the trial court denied the motion and required that such attorney remain in the second trial, so that Defendant was represented by both that attorney and also the substitute cocounsel who entered his appearance on September 21, 1964. Under the facts, it was not an abuse of sound judicial discretion for the court to deny a continuance since there was no showing on the record that Defendant was deprived of an adequate opportunity to prepare and defend his case. In People v. Touhy, 361 Ill 332, 197 NE 849, there had been a mistrial in the first instance and prior to the second trial a motion for continuance was made on the ground that counsel had not been paid for services rendered in the first trial. The court there denied the continuance and refused to allow defendant's attorney to withdraw from the case. The Court on appeal held that there was no basis of a claim of lack of time to prepare under the circumstances. Similarly, in People v. Quevreaux, 407 Ill 176, 95 NE2d 62, the court reiterated that granting of a continuance for purpose of preparation for trial was a matter within the sound discretion of the Court. In that

case the Court was held not to have abused such discretion where continuance was denied to a defendant in spite of the fact that he was appointed as new counsel on the date the trial began. We do not believe there is any reversible error in the action of the trial court in denying the continuance in the instant case.

 ██ Defendant contends that the evidence did not show that his conduct constituted the offense of burglary. The record shows that the other participants by their conduct were guilty of burglary. Defendant Gore aided them before and during the commission of the offense in planning and in the commission of the offense. Under the terms of Chapter 38, Section 5–2, 1961 Illinois Revised Statutes, a person is legally accountable for the conduct of another when either before or during the commission of such offense and with the intent to promote or facilitate the commission of such offense, he solicits, aids, abets, agrees or attempts to aid such other person in the planning or the commission of the offense. As indicated by the court in People v. Washington, 26 Ill2d 207, 186 NE2d 259, at 209, while it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act (see also People v. Lacey, 49 Ill App2d 301, 200 NE2d 11). The evidence in this cause tended to show that Charles Gore was planning the burglary prior to the date of the offense; that he gathered the participants at his house before the date of the offense; that he determined the date for the burglary and instructed participant Banks on the location of the safe earlier in the evening it occurred. A common design among certain persons including Defendant Gore to burglarize Doden's Drug Store was shown by the record; and this burglary was carried out. Defendant Gore on the record aided other defendants by obtaining removal of a car blocking a driveway and after removal of the safe, Defendant Gore helped open it, shared in the proceeds

and drove other participants to Chicago. There is nothing in the record to show a withdrawal from the common design by Defendant Gore. Under this state of facts, Defendant is legally accountable for the commission of the burglary.

██ A contention is made by defendant that the court erred in denying the admission of a certain exhibit to show the bias and prejudice of the witness Barnett. The exhibit is a statement concerning a pending charge of burglary against Barnett, and it was properly denied on the ground that it was irrelevant and immaterial. Barnett was thereafter made a witness by the Defendant and interrogated by him on this matter of bias. Barnett admitted the pendency of a criminal charge against him, but denied any promise of immunity. On the basis of the record, the act of the trial court did not constitute an abuse of discretion of the court in its rulings on the effort of Defendant to show bias or prejudice of the witness Barnett under the circumstances.

The major contentions of Defendant upon which he seeks reversal are based on the assertion that the accomplice testimony was not sufficient to sustain a conviction and that on the record the verdict of the jury is not justified since the State had not proven the guilt of Defendant Gore beyond a reasonable doubt.

██ The accomplice testimony in this cause is sufficient to sustain a conviction. While it is true that such testimony should be received with suspicion and acted upon with caution and the jury should be instructed concerning the testimony, the testimony can properly become the basis of a conviction if the triers of fact are convinced of guilt beyond a reasonable doubt (People v. Palmer, 26 Ill2d 464, 469, 187 NE2d 236; People v. McGuire, 18 Ill2d 257, 163 NE2d 832). In the case before us, the testimony of the accomplice Banks was substantially corroborated in a number of areas by testimony of other witnesses. Proper cautionary instructions were

317

given as to such accomplice testimony as well as matters concerning the credibility of the other witness who had been convicted of previous crimes and presently had a charge pending against him. There is nothing in the record to indicate that the testimony of these witnesses was not properly evaluated by the jury. They both testified that they had made no deals with anyone and this was not contradicted in any way.

When the evidence is conflicting on some issues, the credibility of the witnesses and the weight to be given to the testimony is normally for the trier or triers of fact to determine. The question to be determined by us on review is whether the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to justify entertaining a reasonable doubt of Defendant's guilt. If that were the case, the conviction and sentence would be reversed. We are not justified, however, in reversing a judgment of conviction where evidence is simply conflicting and the credibility of witnesses and the weight to be given to the testimony of witnesses has been passed upon by a jury. The court should not substitute its judgment for that of the jury under such circumstances (People v. Lobb, 17 Ill2d 287, 161 NE2d 325; People v. Galloway, 28 Ill2d 355, 192 NE2d 370). An uncontradicted bit of evidence in the cause before us was the testimony of Rebecca Gore to the effect that Defendant brought the check protector machine which had been taken from Doden's, to her house after the burglary and told her to wash off the fingerprints. This circumstance of recent and exclusive possession by Defendant of part of the proceeds of the burglary was never explained and operates to sustain the conviction of Defendant Gore and to corroborate other evidence of his participation in the burglary as indicated in the course of this opinion.

Upon review of the entire record, we do not believe that there is a basis for reversal in this cause. The action of

the Circuit Court of Rock Island County will, therefore, be affirmed.

Affirmed.

STOUDER and CORYN, JJ., concur.