People of the State of Illinois, Plaintiff-Appellee, v. Louis French, Defendant-Appellant.

Gen. No. 65–118.

Second District.

October 18, 1966.

Corrigan and Mackay, of Wheaton, for appellant.

William V. Hopf, State's Attorney, of Wheaton (Edward Van de Houten, Jr., Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE ABRAHAMSON delivered the opinion of the court.

This is an appeal from the Circuit Court of DuPage County. On May 27, 1965, a jury returned a verdict finding the defendant, Louis French, guilty of armed robbery. The defendant was sentenced to a term of not less than 5 nor more than 15 years in the Illinois State Penitentiary.

Defendant urges three grounds for reversal. 1) That the State failed to prove beyond a reasonable doubt that the defendant and others committed an armed robbery; 2) That the testimony of a police sergeant was that of an admitted accomplice and undeserving of credibility, and 3) That the defendant was prejudiced by the unduly restrictive rulings of the trial judge.

It appears that on Friday, August 21, 1964, shortly before 2:00 p. m. a Brink's, Inc. armored truck delivered some money to a Jewel Tea Co. store in the shopping center in Oakbrook, Illinois. Winifred Jachina, service manager for the Jewel store, had opened the safe and was about to fill the cashbox when an armed stranger entered, told her to drop the money and move over so he could get into the safe. The stranger took $500 in banded money, $250 in quarters and $50 in nickels and the cashbox, placed them in a shopping cart and left the store.

A stock boy, Craig Sayers, who was waiting outside the office, saw what happened and started to follow the stranger from the building, but as he stepped outside, another stranger in a dark topcoat made a motion indicating he had a gun and told Sayers to stop. Sayers stopped, watched the two men put the money into a car and drive away. He noted the license number of the automobile and that it was a 1964 maroon Ford Galaxy without hubcaps. Sayers returned to the store, wrote down the license number and when he went outside again saw that the police were arresting the defendant, Louis French, in the street a short distance from the store. French had not been in the store to Sayer's knowledge, nor was he the stranger in the dark coat who had threatened Sayers with what appeared to be a gun. The two men who drove away in the Ford automobile were arrested before leaving the shopping center and were tried separately for their part in the armed robbery.

H. J. Walthers, a sergeant of the Oakbrook police department, testified that he had known Louis French for

approximately 6½ months prior to the crime; that they had met at the Oakbrook police station where French's wife had been arrested on a charge involving bad checks. Between the time of this meeting and August 21, the date of the crime, Walthers testified that he had met with French on some 25 to 30 occasions, occasionally having had dinner at French's home. He said during this time he had loaned French some money and that, after an armed robbery that occurred in Cook County, French repaid him $300. On two different occasions he had been introduced to the two other men who participated in the Jewel Tea store robbery on August 21. He stated that on one occasion he had given French six armor-piercing bullets, which unknown to French, would not fire. This was shortly prior to an armored car robbery outside DuPage County. Walthers denied giving any guns to French but stated French had given him two guns which he had not turned in to his superiors until after the August 21 robbery.

On the date in question Walthers was on leave. He testified that on the morning of August 21 French called him and stated that he wanted to see him. He met French in a restaurant and French took him into a back room and explained that he and two other men intended to rob the Jewel Tea store in the Oakbrook shopping center at about 2:00 p. m., after an armored truck delivered cash to the store. French did not disclose the identity of the two accomplices but explained that he was to arrive at the shopping center in his own 1963 Oldsmobile station wagon. He was then to take the 1964 maroon Ford Galaxy and cruise the center until the robbery took place. He was then supposed to pick up the other two accomplices and drive them to his Oldsmobile, in which car they intended to leave the area. He asked Walthers if he could get one of the squad cars normally patrolling the center away from the Jewel Tea store and over near the Sears store. Walthers testified that he

promised to see if this could be accomplished and told French he would call him prior to 2:00. Walthers then testified that as he left the restaurant, he noticed a maroon 1964 Ford Galaxy but did not write down the license number as he was in a hurry to get back to the police station. He arrived back at the station about noon and immediately informed the Chief of Police, Richard T. Siudzinski, of his conversation with French. The Chief then called in Sergeant Mandel and Officers Janik and McKenzie of the Oakbrook police department. He advised them of what Walthers had related to him and a course of action was planned. Walthers then made a phone call to French from the police station advising him he could have the squad car normally near the Jewel store sent to patrol near the Sears store at about 2:00 p. m.

Glenn R. Mandel, a sergeant in the Oakbrook police department, testified he first saw the defendant in the shopping center prior to the robbery driving a 1963 Oldsmobile station wagon. His identification was positive. He testified he saw French park the 1963 Oldsmobile. A few minutes later he saw French driving a 1964 maroon Ford without hubcaps with the same license number as that later written down by Craig Sayers. He further stated he saw French driving toward the Jewel Tea store.

John Janik, a police officer on the Oakbrook police force, testified that shortly prior to the armed robbery he was in uniform in a marked squad car. He said he first saw Louis French on August 21 driving a maroon 1964 Ford Galaxy shortly before 2:00 p. m. He saw him drive this car in what is known as the inner circle of the shopping center toward the Jewel Tea store.

Chief Siudzinski, who had changed to civilian work clothes, testified that he had met the defendant on two prior occasions and that as he moved around the area near the Jewel he saw the defendant walking down a parking aisle and enter a maroon 1964 Ford four-door car with no

457

hubcaps. The next time he saw the defendant he was at the wheel of the 1964 Ford parked on the north side of the Jewel Tea. He noted the license number which was the same as that noted by Craig Sayers and the other officers. The description of the Ford by all of the witnesses was the same.

 It appears that the other two participants pled guilty to the charge and were sentenced. It is urged that the evidence fails to prove that the defendant participated in the commission of the crime. Contention is made that the proofs were insufficient to establish that the defendant participated in the armed robbery and that the State's proofs merely placed the defendant at the scene at the time the offense was committed. We agree that the mere presence at the scene of a crime is insufficient to establish guilt. The People v. Boyd, 17 Ill2d 321, 327, 161 NE2d 311 (1959) ; People v. Gore, 64 Ill App2d 309, 316, 211 NE2d 757 (1965).

 Defendant, however, was observed by various police officers driving the getaway car in the immediate vicinity minutes before the crime was committed. This evidence, together with the testimony of Sergeant Walthers, leads us to conclude that the defendant had an active part in the planning of the armed robbery and did participate to the extent of driving and parking the getaway car for the escape. The requirement that the defendant's guilt be proved beyond a reasonable doubt does not mean that the jury must disregard the inferences that flow normally from the evidence before it. The People v. Russell, 17 Ill2d 328, 331, 161 NE2d 309 (1959). Based on the evidence we feel that there was more than sufficient evidence to find the defendant guilty.

 The defendant urges that Sergeant Walthers was in fact an accomplice and as such his testimony, because of his unusual position of seeking to maintain his innocence and at the same time convict the defendant, taxes the credulity of the most gullible and is totally un-

458

worthy of belief. It is further contended that if Sergeant Walthers' testimony is totally unworthy of belief that the defendant's conviction should be reversed in that the only creditable evidence merely places the defendant on the scene. We deem it unnecessary to determine whether or not Sergeant Walthers was an accomplice. In People v. Zaeske, 67 Ill App2d 115, 121, 213 NE2d 577 (1966), this court stated:

"At common law the uncorroborated testimony of an accomplice was sufficient to warrant a conviction if it satisfied a jury beyond a reasonable doubt. This rule has been followed in Illinois. (Citations.) However, where, as here, it appears that the witness has hopes of reward from the prosecution, his testimony should not be accepted unless it carries with it absolute conviction of the truth." (Citations.)

■ It appears to us that Sergeant Walthers' testimony was corroborated by fellow officers in observing the defendant driving the getaway car at the scene immediately prior to the holdup. Further, corroboration appears from the fact that the armed robbery occurred at the time and place where Sergeant Walthers had informed the Chief of Police and other officers that it would occur while implicating the defendant. This series of events, unless viewed in the light of the defendant's participation in the crime, is difficult to comprehend.

■■ The defendant claims prejudice in that the trial judge unduly restricted the cross-examination of Sergeant Walthers. The brief contains an exhibit of the questions to which objections were sustained, 23 in number. We have not been asked to determine the propriety of the rulings but the effect thereof on the defendant's proof to establish that Sergeant Walthers was an accomplice and therefore unworthy of belief. Liberal cross-examination of an accomplice should be permitted to show what influences a witness to testify

459

for the State. The People v. Andrae, 295 Ill 445, 460, 137 NE 496 (1920). It is error to unduly restrict cross-examination of an accomplice as to whether he has received, been promised, expects to obtain, or hopes for leniency or immunity in consideration of his testimony. Algozino v. Welch Fruit Products Co., 345 Ill App 135, 142, 102 NE2d 555 (1951).

After a close scrutiny of the cross-examination of Sergeant Walthers, which was lengthy and extended, encompassing approximately 700 inquiries, we conclude that had the trial court permitted the answers to the 23 questions they would have added nothing to aid the jury in its determination of the credibility or weight to be given Walthers' testimony. We feel under these circumstances that the trial judge did not unduly restrict the cross-examination of Walthers. For the reasons above stated the judgment is affirmed.

Judgment affirmed.

MORAN, P. J. and DAVIS, J., concur.