THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SEBON BROWN, JR., Defendant-Appellant.

(No. 73-240;

Second District (1st Division)—April 23, 1975.

Thomas M. P. Hannigan, of Mundelein, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (John Goshgarian, Assistant State's Attorney, and James W. Jerz, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The defendant, after a jury trial, was convicted of the crime of rape and sentenced to a term of 15 to 30 years' imprisonment. The defendant herein and a codefendant, James Edwards, were tried in a single trial, wherein each was represented by separate counsel. The issues presented are (1) whether the trial court abused its discretion in denying the defendant's motion for a severance; (2) whether the trial court unduly restricted defendant's cross-examination of the testimony of an accomplice; (3) whether the trial court erred when it denied the defendant's offer of proof during the cross-examination of the accomplice; (4) whether the court erred when it overruled defendant's objection during the redirect examination of the prosecutrix; and (5) whether the trial court erred in permitting counsel for the codefendant to examine the witnesses who had been called by the defendant.

We find the defendant's contentions to be without merit and affirm.

The defendant Sebon Brown, Jr., James Edwards, and David Croom were jointly indicted on January 22, 1973, for the robbery and rape of a 17-year-old girl. Prior to the trial, David Croom entered a plea of guilty to the crimes charged in the indictment and was sentenced on the robbery charge only. As part of the plea negotiations, David Croom agreed to testify on behalf of the People of the State of Illinois in the case against Sebon Brown, Jr., and James Edwards.

On April 5, 1973, counsel for defendant Brown, Mr. Hannigan, filed a motion for a severance, which was supported by an affidavit alleging that the proposed defenses of Brown and James were antagonistic and inconsistent. Brown's defense, the motion alleged, was to be that of an alibi, whereas Edwards' defense was to be that of consent of the victim. In support of the motion for a severance, Mr. Hannigan argued that the presentation of these particular defenses within a single jury trial would unduly prejudice his client and prevent an effective defense from being presented. This motion was denied.

On April 9, 1973, a similar motion for a severance of the trials of the defendants was presented by counsel for defendant Brown. This motion was also denied.

Immediately prior to the commencement of the trial, Mr. Hannigan again urged the court to order a severance of the trials. At this point, Mr. Hannigan stated that he had been informed at an earlier time that Edwards intended to assert the consent of the victim as his defense. Mr. Hannigan stated for the record that Edwards had changed his defense from consent of the victim to that of identification. Counsel for defendant Brown argued that even though this defense was apparently harmonious with the alibi defense of his client, his client would be denied an effective defense merely by virtue of being tried with James Edwards. He asserted that Edwards' attorney, Mr. Boches, was not prepared for trial due to Edwards' lack of cooperation in preparing his defense. Even though the defenses were no longer antagonistic, there existed a "personal antagonism," according to Mr. Hannigan, which compelled a severance. Mr. Boches assured the court that he was prepared to defend Edwards and did not support Mr. Hannigan's argument for a severance. The court denied this motion for a severance and the case proceeded to trial.

During the trial, the State called, among other witnesses, David Croom, who testified in essence that Sebon Brown, Jr., James Edwards, and himself had had intercourse with the prosecutrix by force and against her will. This testimony was crucial in the State's case against Sebon Brown, Jr., since the prosecutrix, although able to positively identify James Edwards, was not able to identify Sebon Brown, Jr., with certitude. The State also brought out during direct examination of David Croom the fact that he had entered a plea of guilty to the crimes charged in return for the State's promise to recommend probation.

During the cross-examination of David Croom by counsel for defendant Brown, the court sustained an objection to a question designed to elicit a prior inconsistent statement of the witness, and thereby impeach his credibility. Upon his arrest, David Croom had stated to a police officer that he had been playing cards with some friends at the time the rape had been committed. However, later in the cross-examination of David Croom, counsel for defendant Brown did present the impeaching prior inconsistent statement to the jury without objection. In addition, it should be noted that the police officer, to whom David Croom had made the prior inconsistent statement, testified regarding that statement.

Also during the cross-examination of the accomplice-witness, David Croom, by counsel for defendant Brown, the witness was interrogated and testified concerning the circumstances surrounding his plea of guilty. Initially, this line of questioning was objected to by the State, and the court sustained the objection. However, at a later point, the defense

counsel was successful in fully disclosing the promises made to Croom by the State's attorney. The witness testified that he had been promised probation with periodic imprisonment, immunity from potential prosecution by the Federal government, and a recognizance bond release. In return for these promises, the accomplice-witness testified that he promised to testify on behalf of the State.

The testimony of the 17-year-old prosecutrix regarding the rape was essentially the same as that of the accomplice-witness, David Croom. As stated earlier, on direct examination, the victim was able to identify James Edwards, but was unable to identify with certitude Sebon Brown, Jr. On cross-examination by Mr. Boches, counsel for defendant Edwards, the prosecutrix was asked, "* * * is it possible that you could be mistaken about the identity of the people?" The defendant herein, Sebon Brown, Jr., did not object to this question, even though it encompassed mistaken identification of both defendants. On redirect examination, the assistant State's attorney asked the following question, "May the defendant, Sebon Brown, Jr., who I'm pointing to, next to Mr. Hannigan, have been in the car?" Over the objection of Brown's counsel to the question as being outside the scope of cross-examination, the court allowed the prosecutrix to answer this question. In answering, the prosecutrix stated that it was possible that Sebon Brown, Jr. was one of her assailants. On re-cross-examination by Mr. Hannigan, he asked the prosecutrix the following:

"Q. * * * is it possible that he is not the person?

A. Yes, but it's also possible that he was the one * * *."

At the conclusion of the State's case, Mr. Hannigan presented three alibi witnesses, Ella Scott, Carolyn Scott, and Sebon Brown, Sr., who testified that defendant Brown was with them at the time of the commission of the offense. In addition, Sebon Brown, Jr., testified that he was in the company of these three witnesses at the time the crime had been committed.

The codefendant, James Edwards, presented no evidence. Thereafter, during Mr. Hannigan's closing argumentation, the following occurred.

"Mr. Hannigan: * * * I'm very frustrated by the posture of this particular case. I want to get up, and I want to talk about it. But I am frustrated by the co-defendant. I am. And I think that maybe the evidence of guilty as against him may be so overwhelming———

Mr. Boches: Your Honor, I object to this kind of argument. I don't think it's up to him to comment on my client."

Subsequently, during the closing argument of Mr. Boches, he stated:

"* * * For a minute I kind of thought we had two prosecutors

here. I can't find out whether Mr. Hannigan is more anxious to convict my client than he is to free his own———

Mr. Hannigan: Your Honor, I made no such argument. I object. The Court: The objection is overruled. You brought it out in the open. He has a right to reply to it."

Thereafter, the jury returned verdicts of guilty against both defendants. Defendant Edwards was sentenced to a term of 10 to 20 years' imprisonment. A sentence of 15 to 30 years' imprisonment was imposed upon defendant Brown, who has taken this appeal.

The first issue presented for our consideration is whether the trial court abused its discretion in denying the defendant's motion for a severance from the trial of the codefendant, James Edwards. It is provided that

"If it appears that a defendant or the State is prejudiced by a joinder or related prosecutions or defendants in a single charge or by joinder of separate charges or defendants for trial the court may order separate trials, grant a severance of defendants, or provide any other relief as justice may require." Ill. Rev. Stat. 1973, ch. 38, par. 114—8.

■■ Defendant contends that the failure to sever the trials of the defendants deprived him of a fair trial. At the trial, the defendant herein presented an alibi defense, and the codefendant argued mistaken identification and reasonable doubt. Defendant concedes that the defenses asserted at the trial are not mutually exclusive nor inconsistent with each other. It is well recognized that antagonistic defenses of the defendants provide grounds for a severance. However, this is not present in the case at bar. Rather, the defendant asserts that there was a "personal antagonism," which operated to the detriment of his client.

In support of his contention, the defendant sets forth illustrations of what he refers to as "personal antagonism." Among his illustrations, defendant asserts that he attempted to try the case on the narrow issue of identity, while counsel for Edwards employed what defendant refers to as a "shot gun" approach. Having reviewed the record, we find nothing inconsistent with these two techniques of advocacy. While the defendant preferred to concentrate his defense on identity, the codefendant preferred to question a broader spectrum of the State's case. There is nothing per se in the defense presented by the codefendant which detrimentally affected the defense presented by Brown.

As further evidence of the "personal antagonism" present throughout the trial, the defendant cites two episodes which occurred during the selection of the jurors. At one point, Mr. Hannigan asked the court to dismiss the venire because, "Earlier this afternoon when I entered the

courtroom, Mr. Boches made a comment to me, 'You are better off to try it this way' * * * I did not respond to the comment, but I think it may taint some of those ideas with the idea that we're in this together, and I don't want this concept brought to this Jury in one iota." The court ruled that this was not a sufficient ground to dismiss the venire. We agree.

■■ The second episode during the selection of the jury which the defendant asserts is evidence of "personal antagonism" is the objection made by Mr. Boches to Mr. Hannigan's interrogation of a prospective juror. Mr. Boches requested that the prosecutrix be referred to as the "alleged" rape victim rather than as the rape victim. Mr. Hannigan was apparently annoyed by this; however, we cannot say that this minimal irritation to Mr. Hannigan is a basis for compelling a severance of the trials. Nor can we find that this incident demonstrates a "personal antagonism" which deprived defendant Brown of a fair trial.

Further, the defendant contends that the codefendant's examination of Ella Scott, one of Brown's alibi witnesses, was prejudicial to his defense. It should be noted that counsel for the codefendant did not cross-examine the witness as such, but merely sought to ascertain if the witness knew David Croom and to clarify other testimony. Having reviewed the record, we find nothing which was prejudicial to the defendant in the testimony of the witness upon examination by the codefendant.

■■ Finally, in support of his contention that "personal antagonism" of the parties and of the attorneys should have been grounds for a severance, defendant cites Mr. Boches' comments during closing argument, as reported above. In citing Mr. Boches' comments during closing argument the defendant is overly selective in reading the record. It was the defendant's attorney who initiated the confrontation by stating that the State's evidence was overwhelming as to Edwards. Thereby, he placed Mr. Boches, counsel for Edwards, in a position of responding to Mr. Hannigan's statement of Edwards' guilt. It appears that if there was any "personal antagonism" in this case, it was the unilateral hostility of Mr. Hannigan toward the defendant Edwards and his attorney, Mr. Boches.

The general rule regarding severance of defendants is that persons jointly indicted shall be jointly tried.

As was said in *People v. Earl* (1966), 34 Ill.2d 11, 13, 213 N.E.2d 556, 557:

> "A separate trial is not a matter of right but is in the discretion of the trial judge. Denial of a motion for separate trial is not reversible error in the absence of an abuse of discretion."

See also *People v. Watkins* (1972), 3 Ill.App.3d 560, 564, 278 N.E.2d

156; *People v. James* (1970), 130 Ill.App.2d 532, 536, 263 N.E.2d 705; *People v. Bernette* (1970), 45 Ill.2d 227, 241, 258 N.E.2d 793; *People v. Canaday* (1971), 49 Ill.2d 416, 424, 275 N.E.2d 356; *People v. Brooks* (1972), 51 Ill.2d 156, 166, 281 N.E.2d 326.

■■ In determining whether a severance should be granted the primary inquiry is " '* * * whether the defenses are of such an antagonistic nature that a severance is imperative to insure a fair trial.' " (*People v. Canaday* (1971), 49 Ill.2d 416, 424, 275 N.E.2d 356.) The incidents presented by the defendant as evidence that a joint trial was prejudicial to him, do not demonstrate that the defendant was deprived of a fair trial. Having reviewed the record, we find no abuse of discretion by the trial court in denying the defendant's motion for a severance.

The second issue to be resolved is whether the trial court unduly restricted defendant's cross-examination of David Croom, the accomplice who had entered a plea of guilty and testified on behalf of the State. The defendant contends that he was precluded from impeaching the witness through a prior inconsistent statement and from inquiring into the circumstances surrounding the witness' plea of guilty.

■■ It has been held that

> "Consistent with the view that testimony of an accomplice is to be looked upon with caution, and, for the purpose of permitting the jury to know and consider the influences under which the testimony was given, we have held that great latitude is to be permitted in the cross-examination of an accomplice (*People v. Derrico*, 409 Ill. 453,) and that a defendant may properly inquire into any motives that may have influenced an accomplice to offer himself as a witness in behalf of the prosecution." *People v. Baker* (1959), 16 Ill.2d 364, 371, 158 N.E.2d 1, 5.

Consequently, the defendant is to be permitted the widest latitude in cross-examining the accomplice-witness. In addition to receiving the testimony of an accomplice-witness with caution, an additional safeguard is present in that the jury receives an IPI instruction stating that "[w]hile it is a rule of law that a person accused of a crime may be convicted upon the uncorroborated testimony of an accomplice, still the jury should always act upon such testimony with great care and caution in light of all the evidence in the case, as such testimony is subject to suspicion; * * *." This instruction was given to the jury in the case at bar.

■■ In addition to subjecting the testimony of an accomplice-witness to scrutiny, this court has held, "It is error to unduly restrict cross-examination of an accomplice as to whether he has received, been prom-

ised, expects to obtain, or hopes for leniency or immunity in consideration of his testimony". *People v. French* (1966), 75 Ill.App.2d 453, 460, 220 N.E.2d 635, 638, 639.

Applying the law to the facts in this case, we conclude that the defendant was not unduly restricted in his cross-examination of David Croom. The record discloses that the prior inconsistent statement affecting the witness' credibility and the details of the negotiated plea were indeed presented to the jury during cross-examination by defense counsel.

The defendant next contends that he was denied an opportunity to make an offer of proof during his cross-examination of the accomplice-witness. As stated above, initially the court sustained the State's objection to defense counsel's inquiry into the facts and circumstances surrounding the witness' plea of guilty as being outside the scope of direct examination. At that point, defense counsel requested the court to allow him to make an offer of proof. Counsel approached the bench and the following was recorded outside the hearing of the jury.

> "Mr. Hannigan: * * * my intent with this witness, the interrogation insofar as Mr. Will [attorney for David Croom] and the attendant circumstances, go to show the negotiations, the deal that was presented, the fact that before he made any statement implicating himself, it was not a probation offense. * * *"

The record discloses that subsequently all of these matters surrounding the guilty plea of David Croom were fully presented to the jury during cross-examination of Croom.

■■ The purpose of an offer of proof is merely to preserve on the record the nature of the offered evidence, to which an objection has been sustained so as to enable a court of review to determine if the ruling was erroneous. As the record quoted above demonstrates, the nature of the evidence that defense counsel was attempting to elicit is clear and was preserved on the record. Moreover, the record reveals that the circumstances surrounding the accomplice-witness' plea of guilty were fully presented to the jury at a later point during his cross-examination. In light of these facts, we hold that no error was committed by the trial court.

■■ The fourth issue presented on review is whether the court erroneously overruled the defendant's objection during the redirect examination of the prosecutrix. The facts underlying this issue have been set forth above. The defendant contends that the redirect examination of the prosecutrix by the State should have been confined to testimony elicited during cross-examination by counsel for defendant Brown. De-

fendant argues that the question on redirect concerning the identification of defendant Brown, was outside the scope of that particular defendant's cross-examination. We find defendant's argument not persuasive. Counsel for the codefendant had interrogated the prosecutrix concerning the identity of her assailants, and did not confine his question solely to the identity of his client, James Edwards. This question was not objected to by defendant Brown. Therefore, the redirect examination of the prosecutrix regarding the identity of defendant Brown did not exceed the scope of cross-examination, and the trial court properly overruled the defendant's objection.

As a final issue, the defendant contends that the trial court erred in permitting counsel for the codefendant to examine witnesses presented on behalf of the defendant herein. Specifically, the defendant objected to codefendant's examination of Mr. Quarta, a police officer called as a witness by defendant Brown, of Ella Scott, an alibi witness, and of Sebon Brown, Jr., the defendant. The defendant argues that a defendant does not have the right to examine the witnesses of another defendant, unless those witnesses implicate or otherwise incriminate him.

The sole question asked by Edwards' counsel of Mr. Quarta was whether there had been a lineup involving his client, James Edwards, to which the witness responded, "No." Of Ella Scott, Edwards' counsel inquired if she knew David Croom, and if she recalled the first time anyone discussed with her the whereabouts of Sebon Brown, Jr., on the night the offense had been committed. A third question, asking Ella Scott if anyone had told her what to say, might have been prejudicial to Brown's case, if answered. However, any possible error was cured by the withdrawal of this question at the suggestion of the court. Of Sebon Brown, Jr., Edwards' attorney inquired if he ever had had a conversation with David Croom. To this question, Brown's counsel objected, and it was withdrawn. No further questions were asked of Brown by counsel for the codefendant.

In support of his argument, defendant cites *People v. Braune* (1936), 363 Ill. 551, 2 N.E.2d 839, where two jointly tried physicians attempted to accuse the other of an alleged abortion which resulted in the death of a woman. In *Braune*, each codefendant was subjected to a searching and critical cross-examination by each other's attorney. In that situation, each protested his own innocence while attempting to condemn the other. Such was not the case here. None of the questions asked of the defendant and his witnesses by codefendant Edwards' counsel sought to extricate Edwards and implicate Brown. Nor were any of the questions permitted by the court designed to impeach the credibility of these

witnesses. The few questions that were permitted by the trial court were solely to clarify testimony or to aid in the defense of Edwards *without* detracting from the defense of Brown.

We therefore affirm the judgment.

Affirmed.

SEIDENFELD, P. J., and GUILD, J., concur.