THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROY JUNIOR JAMES, Defendant-Appellant.

(No. 70-26; ▮▮▮▮▮▮▮▮▮▮▮▮▮

Second District—November 4, 1970.

Cannariato, Nicolosi & Pigatti, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (Galyn W. Moehring, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

The appellant, Roy Junior James, was jointly indicted with Herdis Sockwell, Jr. and Webster Williams for the offense of rape. The defendants were jointly tried in July, 1969, after they waived their respective rights to trial by jury and all three were found guilty as charged in the indictment. James was sentenced to a term of not less than six or more than twenty years in the penitentiary.

Subsequent to the trial but before sentencing, James moved for a post trial hearing to determine competency pursuant to Section 104—2 of the Criminal Code (Ill. Rev. Stat. 1967, ch. 38, par. 104—2). The trial judge ordered that James be examined by two psychiatrists and, after he had received their reports, denied the motion. Subsequent motions for a new trial were also denied and this appeal followed.

Sub-paragraph (a) of Section 104-2 provides:

"(a) If before a trial, or after a judgment has been entered but before pronouncement of sentence, or after a death sentence has been imposed but before execution of that sentence, the court has reason to believe that the defendant is incompetent the court shall suspend the proceedings and shall impanel a jury to determine the defendant's competency. If a jury is waived by the defendant, the court shall conduct a hearing to determine the defendant's competency."

Paragraph 104—1 defines an incompetent as used in this context as one who is "unable because of a mental condition: (a) To understand the nature and purpose of the proceedings against him; or (b) To assist in his defense; or (c) After a death sentence has been imposed, to understand the nature and purpose of such sentence."

■■ If facts are brought to the attention of the trial court that raise a *bona fide* doubt as to the competency of the accused to understand the nature of the charges brought against him or to cooperate with his coun-

sel a jury must be impanelled (unless waived as provided in paragraph 104-2(a)) to determine that question. *People v. Thomas,* 43 Ill.2d 328, 332; *People v. McLain,* 37 Ill.2d 173; *People v. Burson,* 11 Ill.2d 360, 368.

Most of the many reported cases on this issue as could be expected, concern themselves with the existence of the "bona fide doubt" that requires a competency hearing. The appellant here contends that sufficient matter was presented to the trial court to create such a doubt and that the order of a psychiatric examination indicates that, in fact, the trial judge did have a *bona fide* doubt in his own mind. Under those circumstances, it is argued that the court had no choice but to impanel the jury and conduct the hearing.

Affidavits were filed in support of the motion to the effect that James had been committed to a psychiatric hospital approximately two and one-half years prior to his trial and that defense counsel only learned of that fact after the trial had been concluded. A second affidavit of additional counsel brought into the case after the trial states, incorrectly, that the defendant had been adjudicated incompetent at the earlier hearing. The sister of the defendant also furnished an affidavit that stated that he had been declared incompetent in 1967 but that of his father recites only that James was hospitalized for six to eight weeks in a psychiatric hospital. Three of the four affidavits contain statements that in the opinion of the affiant James is or may be mentally incompetent.

A supplement to the report of proceedings contains the records of the 1967 proceeding. A petition was filed in February, 1967, by James' mother that alleged he was in need of mental treatment. James was examined by two court appointed physicians who were of the opinion that James had no psychosis but needed "mental treatment that could be administered ambutorily". On February 16, 1967, the court found James to be legally competent but in need of mental treatment and ordered treatment on an outpatient basis. He was conditionally discharged shortly thereafter and completely discharged in August, 1967.

The psychiatric reports prepared in accordance with the order entered in this cause were somewhat dissimilar. Dr. Carl Hamann was of the opinion that James was on the "lower side of normal intelligence" and that with his emotional conflicts he had a "diminished" ability to cooperate with counsel. Dr. J. G. Graybill found James to be mildly retarded but without thought disorder or perceptual distortion. He was of the opinion that James was competent, did understand the nature of the charges placed against him and was able to cooperate with counsel.

■■ The fact that the defendant was hospitalized in 1967 for psychiatric treatment does not necessarily raise a *bona fide* doubt as to his competency to understand the nature of the charges against him or cooperate with counsel. (*People v. Richeson*, 24 Ill.2d 182, 184; *Withers v. The People*, 23 Ill.2d 131, 134, 135.) The record of that proceeding discloses only that the examining physicians were of the opinion that James was "on his way to becoming an alcoholic addict" and that after his last alcoholic bout he became mentally disturbed. Contrary to the affidavits, the court found in 1967 that James was competent although in need of mental treatment.

The affidavits themselves were of little probative value since they contain only the opinion of the new counsel that James is incompetent and the conclusion of the sister and father that he "may" be incompetent all apparently based on his need for psychiatric treatment in 1967.

■■ In further support of the argument that a *bona fide* doubt did exist, it is pointed out that James refused to testify at the trial despite the persistent entreaties of his counsel that he so do. Although the record does not, and perhaps cannot, disclose the reason that James chose to remain mute it is significant that he expressed concern over a public trial at the time of his arrest. In his argument on the motion for a competency hearing, the defense counsel stated that he did not suspect that his client had any mental problems until after the trial when he learned of his commitment in 1967. James had answered his questions and cooperated in the preparation for trial but absolutely refused to testify in his own behalf. After he learned of his prior trouble, counsel was of the opinion that the refusal was a result of a fundamental inability to understand the nature of the charge against him. There is nothing in the record, however, that would in any way indicate that James was incompetent and his decision to stand mute would not create a *bona fide* doubt as to his ability to cooperate with counsel. (*People v. Sims*, 34 Ill.2d 206, 207, 208.)

■■ The fact that the trial judge ordered a psychiatric examination of the defendant does not convince us that there was a *bona fide* doubt in his mind as to the mental condition of the defendant. Indeed he stated at the time he ordered the examination that "nothing occurred during the course of the trial and the motions I heard that led me to believe that there was any question as to his competency." The fact that professional, psychiatric advice is sought by the trial court does not of itself indicate that a *bona fide* doubt exists as to the mental condition of the accused. (*People v. Sims*, 34 Ill.2d 206, 210; *People v. Robinson*, 22 Ill.2d 162, 168.) The test is whether all the facts presented to the court are suf-

ficient to raise the *bona fide* doubt. (*People v. Lego,* 32 Ill.2d 76, 78.) We do not feel that they did so in this case and therefore the trial judge was not required to conduct a competency hearing.

The defendant further contends that the trial court committed reversible error when it refused to grant his motion for severance and that he was denied the right to appear at a hearing to suppress the confessions of his co-defendants.

■■ Ordinarily, the question of severance of jointly indicted defendants is left to the sound discretion of the trial court. (*People v. Ross,* 41 Ill.2d 445, 461.) A severance should only be granted where the defenses are antagonistic or inconsistent. (*People v. McCasle,* 35 Ill.2d 552, 556.) There is nothing in the record nor is any argument offered to show that James' defense was inconsistent or antagonistic to that offered by his co-defendants. Furthermore, there is nothing to show that James was denied the right to be present at the hearing to suppress confessions and since the confessions were admitted only against the other defendants, the contention is without merit.

The judgment and sentence imposed by the trial court will be affirmed for the reasons stated.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.