THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS MELKA, Defendant-Appellant.

First District (6th Division)  No. 1—98—1077

Opinion filed October 6, 2000.—Rehearing denied March 13, 2001.

432

Daniel J. Stohr and William G. Engerman, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Thomas Melka was found guilty of first degree murder, attempted first degree murder, aggravated battery with a firearm, home invasion and aggravated battery.[1] Defendant was sentenced to natural life imprisonment for murder and consecutive prison terms of 45 years for attempted first degree murder and home invasion.

In a prior Rule 23 order, relying on *People v. Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712 (1994), this court reversed and remanded, holding that the trial court erred in failing to hold a fitness hearing, despite knowledge that defendant was taking psychotropic drugs. *People v. Melka*, No. 1—95—0747 (1996) (unpublished order under Supreme Court Rule 23). On remand, the trial court conducted a retrospective fitness hearing and found that defendant had been fit to stand trial. Defendant now appeals.

The record on appeal discloses that, on remand, the State filed a motion to have defendant's conviction affirmed or to conduct a retrospective fitness hearing. The State argued that this court's prior order was based on *Brandon*, but that the Illinois Supreme Court's opinion in *People v. Burgess*, 176 Ill. 2d 289, 680 N.E.2d 357 (1997), decided after this court's order in this case, was controlling and did not require a new trial. Defendant's counsel objected, arguing that this court's order was the law of the case.

On September 2, 1997, the trial court reserved ruling on the State's motions, pending a determination of whether defendant was fit to participate in a retrospective fitness hearing. Defense counsel objected to the fitness evaluation. Defendant refused to sign consent forms for the release of his medical records on advice of counsel. On October 9, 1997, the trial court received a medical report concluding that defendant was currently fit.

On November 20, 1997, defense counsel moved for substitution of judge for prejudice. The trial court denied the motion, ordered that

---

[1]The facts of the underlying offenses are not in dispute. On December 24, 1993, Melka went to the home where his former girlfriend Cindy was celebrating the holidays with her family. Using a 9 millimeter semi-automatic pistol, Melka killed Cindy's new boyfriend and her sister and shot three others at the house. At trial, defendant asserted an insanity defense.

there would be a hearing on whether defendant was currently fit and whether defendant had been fit to stand trial. The transcript of proceedings discloses that the trial judge so ruled because he believed the law was changed by later judicial decisions. The trial judge also stated that if defendant's position was upheld by the Illinois Supreme Court, he would recuse himself from further proceedings.

At the outset of the hearing, defense counsel unsuccessfully argued that this case was distinguishable from *Burgess*. The trial court conducted the fitness hearing. The State presented testimony from Dr. Matthew Markos, a forensic psychiatrist who submitted a written report to the trial court before defendant's trial opining that defendant was fit to stand trial. At the hearing, Dr. Markos testified that he examined defendant in October 1997, although defendant told Dr. Markos his participation would be limited on advice of counsel. Dr. Markos opined that defendant was currently fit to participate in the hearing. Defense counsel questioned Dr. Markos regarding defendant's past and current mental condition.

Defense counsel told the trial court that he was not waiving his motion for substitution of judge and was not waiving defendant's right to a jury trial. The trial court responded that defendant had not demanded a jury trial for the fitness hearing.

Harry Gunn, Ph.D., a forensic psychologist, testified on behalf of defendant. Dr. Gunn testified that defendant's "Axis I" diagnosis was bipolar affect disorder with psychosis and paranoid features. Dr. Gunn also opined that defendant's "Axis II" diagnosis was paranoid personality.

On cross-examination, Dr. Gunn admitted these diagnoses were based completely on a review of defendant's medical records. Dr. Gunn admitted that he had not examined the defendant. Dr. Gunn further testified that he would have to examine defendant to determine his fitness.

Following this testimony, the trial court ruled that defendant was currently fit and that the retrospective fitness hearing would proceed. Defense counsel invited the trial court to hold him in contempt, as counsel had no intention of participating in the hearing. The trial court declined to do so. The State called Dr. Markos, who opined that, based on his review of the medical records and his own examinations of defendant, defendant was fit to stand trial in January 1995. The records Dr. Markos reviewed included a report by Dr. Larry Heinrich, a psychiatrist who examined defendant in May, August and September of 1994, that concluded that defendant was fit to stand trial. Dr. Markos also reviewed a report by social worker John Goodman containing a similar conclusion.

At the conclusion of Dr. Markos's direct testimony, defense counsel reiterated that he was not participating in the hearing, adding that he had inadvertently fallen asleep during them. Defense counsel declined to cross-examine Dr. Markos. The State rested. Defense counsel declined to present witnesses.

Based on Dr. Markos's testimony, the trial court found that defendant had been fit to stand trial in January 1995. Based on the original jury verdicts, the trial court entered judgment on the verdict and reimposed defendant's original sentence. Defendant now appeals to this court.

## I

Initially, this court must consider our supreme court's decision in *People v. Mitchell*, 189 Ill. 2d 312, 727 N.E.2d 254 (2000), and its impact on this appeal. As noted above, this court's prior order relied on the supreme court's decision in *People v. Brandon*, 162 Ill. 2d 450, 643 N.E.2d 712 (1994). The *Mitchell* decision, handed down while the current appeal was pending before this court, held that the supreme court had erred in implying in *Brandon* "that the legislature equated the administering of psychotropic medication to a defendant with a *bona fide* doubt as to his fitness to stand trial, and we no longer adhere to that conclusion." *Mitchell*, 189 Ill. 2d at 331, 727 N.E.2d at 267.

The *Mitchell* court also overruled the holding in *Brandon* that it was ineffective assistance of counsel *per se* to fail to request a fitness hearing where the defendant was taking psychotropic medication, holding:

"[D]efining the test as whether a defendant would have received a fitness hearing cannot be correct. If a defendant would have been found fit to stand trial, he suffered no prejudice by not having a fitness hearing. The correct test for evaluating prejudice in these situations is whether a reasonable probability exists that, if defendant would have received the section 104—21(a) fitness hearing to which he was entitled, the result of the proceeding would have been that he was found unfit to stand trial." *Mitchell*, 189 Ill. 2d at 334, 727 N.E.2d at 268.

The *Mitchell* court also recognized that in the cases decided since *Brandon*, retrospective fitness hearings that were considered improper under *Brandon* have now become the norm. *Mitchell*, 189 Ill. 2d at 339, 727 N.E.2d at 270.

The State requested leave to cite *Mitchell* as supplemental authority in this case. We allowed the motion and further directed the parties to file supplemental briefs on the matter, which the parties did prior to oral argument in this case.

■ Defendant does not claim that *Mitchell* is inapplicable to this appeal. Nevertheless, it is worth noting that our supreme court's decisions generally apply retroactively to causes pending at the time they are announced, including cases pending on direct review. *People v. Cortes*, 181 Ill. 2d 249, 276, 692 N.E.2d 1129, 1140 (1998). Indeed, *Cortes* involved the retroactive application of *Burgess*, the case which the trial court relied on in conducting the retrospective fitness hearing in this case.

Instead, defendant argues that this court's prior statutory analysis is still good law, claiming that *Mitchell* overruled *Brandon* only as to claims of ineffective assistance of counsel arising prior to *Brandon* and later amendments to the relevant statute not at issue here. It is true that the *Mitchell* court rejected the claim of ineffective assistance of appellate counsel in that case because no Illinois court had held that a trial court's failure to order a fitness hearing *sua sponte* was a denial of due process. *Mitchell*, 189 Ill. 2d at 332-33, 727 N.E.2d at 267. However, the *Mitchell* court went further, holding that defendant failed to show ineffective assistance of trial counsel because the record did not show a reasonable probability that defendant would have been found unfit to stand trial. *Mitchell*, 189 Ill. 2d at 334, 727 N.E.2d at 268.

■ In this case, this court's prior order was premised entirely on the rule set forth in *Brandon* and its progeny that the legislature had equated administration of psychotropic medication to a *bona fide* doubt of fitness to stand trial, which then triggered the statutory duty to hold a hearing. *Melka*, slip order at 3-4. Contrary to defendant's suggestion, *Mitchell* rules that this statutory analysis is no longer correct.

Viewing defendant's original claims in light of *Mitchell*, it is apparent in retrospect that defendant was not entitled to relief. Defendant's original claims were based on the failure of the trial court to conduct or his trial counsel to seek a fitness hearing based on his consumption of psychotropic medication. Yet the knowledge that defendant had been given psychotropic medication does not, by itself, trigger any duty on the part of the trial court or defense counsel.

Moreover, the record showed, as reflected in this court's original order, that Dr. Markos evaluated defendant's fitness to stand trial prior to trial, submitted a written report to the trial court opining that defendant was fit, and testified at trial that defendant was fit to stand trial. See *Melka*, slip order at 2-3.

The record further showed (as defendant notes in his initial brief in this appeal) that on January 17, 1995, defense counsel moved for a continuance alleging in relevant part that "due to defendant's psychological condition, he will be unable to endure a death penalty

trial and remain fit." Defense counsel's concern immediately prior to trial that defendant might not *remain* fit through a trial lends support to the conclusion that defense counsel either did not believe or had no evidence that defendant was unable to understand the nature and purpose of the proceedings against him and assist in his defense at the outset of the trial.[2]

In sum, this is an appeal in which defendant complains of alleged constitutional errors occurring in the course of proceedings to which defendant has no entitlement under current law. Notwithstanding the occurrence of constitutional error, a reviewing court may affirm where it is able to conclude, upon examination of the entire record, that the error was harmless beyond a reasonable doubt. See, *e.g.*, *People v. Ward*, 154 Ill. 2d 272, 344, 609 N.E.2d 252, 283 (1992). In this case, rather than being denied due process of law or the effective assistance of counsel, defendant received more process and assistance than that mandated by our supreme court following *Mitchell*. Thus, even if defendant were correct in any of his arguments, the errors would be harmless beyond a reasonable doubt. Nevertheless, in recognition of the continuing evolution of the law on this issue, this court will turn to address defendant's arguments on appeal.

## II

■ Defendant contends that the retrospective fitness hearing exceeded this court's mandate in the prior appeal. Any order issued by a trial court outside of the scope of the mandate is void for lack of jurisdiction and must be reversed and vacated. *People v. Bosley*, 233 Ill. App. 3d 132, 138, 598 N.E.2d 355, 359 (1992). However, as noted above, the supreme court held in *Cortes* that *Burgess* was retroactively applicable to cases pending when *Burgess* was decided. Moreover, the record shows that this court did not specifically order a new trial, though admittedly this would have been the expected course of action under *Brandon*.

Defendant also claims in passing that this court's prior order became the "law of the case" or was *res judicata* on the fitness issue. While a trial court is normally bound on remand by this court's disposition of questions of law, there is an exception to the "law of the case" doctrine where a higher reviewing court, subsequent to the lower reviewing court's decision, makes a contrary ruling on the same issue. *E.g.*, *Zerulla v. Supreme Lodge Order of Mutual Protection*, 223

---

[2]Indeed, the February 28, 1998, transcript of proceedings contains a statement by the trial judge that the language of defense trial counsel's motion for continuance was one reason no fitness hearing was conducted prior to the trial.

Ill. 518, 520, 79 N.E. 160, 161 (1906); *Martin v. Federal Life Insurance Co.*, 164 Ill. App. 3d 820, 824, 518 N.E.2d 306, 309 (1987). The doctrine of *res judicata*, which provides that a final judgment on the merits is conclusive as to the rights of the parties and bars a later action on the same claim, is inapplicable here, as the case remained subject to further appeal. See *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 442-43, 420 N.E.2d 147, 150 (1981).

In sum, given the record on appeal in this case, the trial court acted within its authority on remand to conduct a retrospective fitness hearing pursuant to *Burgess*.

## III

■ Defendant next contends that his particular case was not the proper subject of a retrospective fitness hearing. Defendant first quotes our supreme court as stating:

"[R]etrospective fitness determinations will normally be inadequate to protect a defendant's due process rights when more than a year has passed since the original trial and sentencing. In exceptional cases, however, circumstances may be such that the issue of defendant's fitness or lack of fitness at the time of trial may be fairly and accurately determined long after the fact. In such cases, *Burgess* will apply, and a defendant will not automatically be entitled to have his original conviction and sentence automatically set aside for a new trial." *People v. Neal*, 179 Ill. 2d 541, 554, 689 N.E.2d 1040, 1046 (1997).

However, as noted above, the *Mitchell* court now recognizes that retrospective fitness hearings are the norm.

Moreover, even if *Neal* applied, defendant misconstrues the phrase "exceptional circumstances." The record shows that defendant's mental condition and his medication had been examined prior to trial and were the subject of expert testimony at trial. Given the contemporaneous evidence regarding defendant's fitness to stand trial, the trial court did not err in determining that defendant's fitness at the time of trial could be fairly and accurately ascertained, despite the passage of time in this case.

## IV

■ Defendant argues that the State failed to carry its burden at the retrospective fitness hearing. Defendant argues that the State failed to explain or contradict the trial judge's January 11, 1995, order finding that defendant had not been receiving his prescribed medication. Defendant overlooks the fact that the same order requires that the medication be administered. The record also shows that Dr. Mar-

kos had a conference with defense counsel on January 18, 1995, during which no question of fitness was raised. In his brief, defendant also notes that Dr. Kartan, one of defendant's treating psychiatrists, testified at trial regarding her treatment and medication of defendant in January 1995.

Furthermore, the record shows, as noted above, defense counsel was concerned immediately prior to trial that defendant might not *remain* fit, suggesting that defense counsel either did not believe or had no evidence that defendant was unfit. Indeed, the February 28, 1998, transcript of proceedings contains a statement by the trial judge that the language of defense trial counsel's motion for continuance was one reason no fitness hearing was conducted before the trial.

Defendant argues that the State failed to present evidence on the nature, properties and dosage of the medication at issue and their effect on the defendant's ability to understand and participate in his defense. See *People v. Nitz*, 173 Ill. 2d 151, 163-64, 670 N.E.2d 672, 677 (1996). The record shows that Dr. Markos testified regarding the medications administered and their dosages. Defendant notes that Dr. Markos gave different dosage levels for some of the drugs administered, but Dr. Markos also testified that defendant's medications and their dosages were changed from time to time to meet the needs of his condition, in accordance with common practice.

On the question of the medication's effect on defendant's ability to understand and participate in the defense, the record shows that Dr. Markos testified that he had reviewed defendant's records and was unaware of any evidence that defendant's ability was impaired on these points. Defendant notes in his brief that the medications at issue have "potential recognized adverse psychotropic effects." However, a potential adverse effect is by definition not a certainty. The quotations in defendant's brief from the Physician's Desk Reference (52nd ed. 1998) address adverse reactions that are "associated" with a medication, or which "may occur" in certain patients. The record shows that Dr. Markos testified that the issue is whether defendant exhibited symptoms rendering him unfit. Defendant points to no evidence in the record that he suffered any such symptoms or adverse reaction to his medications at the time of trial.[3]

In addition, while a trial court cannot rely on defendant's trial demeanor to deny a fitness hearing in the face of evidence of a *bona fide* doubt of fitness, the defendant's trial demeanor is clearly relevant to

---

[3]It is worth noting that defendant claims that Dr. Markos testified that defendant had been given a drug known as Clozaril or Clozopine, but the record citation provided by defendant contradicts this claim.

the issue. *Mitchell*, 189 Ill. 2d at 335, 727 N.E.2d at 269. The crux of the prior appeal was that the trial court knew of defendant's medication and treatment, yet did not order a fitness hearing. The trial judge's observation of defendant did not prompt him to order a fitness hearing.

Defendant further argues that the State failed to rebut Dr. Gunn's testimony regarding "decompensation," a worsening of mental health that can be caused by stress, such as the stress of a trial or a transfer from one facility to another. The State notes that Dr. Gunn did not testify that defendant had decompensated. Defendant replies that Dr. Lawrence Heinrich testified at his sentencing hearing that defendant had decompensated on occasion. However, defendant is raising the issue of decompensation as it related to the remand, not the original proceedings.

The record shows that Dr. Markos opined that defendant was fit to participate in the proceedings on remand. Dr. Gunn admitted that he had not examined the defendant, which would be necessary to determine his fitness. Thus, even assuming *arguendo* that defendant may have decompensated since his sentencing, the State's expert's opinion on defendant's fitness was unrebutted.

In sum, the trial court did not err in concluding that this case would be amenable to a retrospective fitness hearing. Defendant has failed to show that the trial court erred in ruling that defendant was fit on remand and had been fit to stand trial.

## V

■ Defendant next contends that the State should have been judicially estopped from seeking a retrospective fitness hearing where the State had argued in the prior appeal that there was nothing more to investigate or learn regarding defendant's fitness to stand trial. The doctrine of judicial estoppel provides that when a party assumes a certain position in a legal proceeding, that party is precluded from assuming a contrary position in a subsequent legal proceeding. *People v. Wisbrock*, 223 Ill. App. 3d 173, 175, 584 N.E.2d 513, 515 (1991). For the doctrine to apply: (1) the party must have taken two positions; (2) the positions must have been taken in separate judicial or quasijudicial administrative proceedings; (3) the party must have intended for the trier of fact to accept the truth of the facts alleged in support of the position; (4) the party must have succeeded in asserting the first position and received some benefit from it; and (5) the two positions must be inconsistent. *Wisbrock*, 223 Ill. App. 3d at 175, 584 N.E.2d at 515.

■ In this case, even assuming *arguendo* that the fitness hearings

were separate proceedings from the case as a whole, this court's prior order rejected the State's position in the first appeal. *Melka*, slip order at 4. Thus, defendant's argument is unpersuasive. Defendant replies that the State should not in any event be permitted to assert inconsistent proceedings. This argument is unpersuasive because it does not account for the changes in the law announced by our supreme court.

## VI

■ Defendant contends that the trial court denied him due process of law by denying his motion for substitution of judge pursuant to section 114—5 of the Code of Criminal Procedure (725 ILCS 5/114—5(d) (West 1996)). A defendant's right to substitution of judge for cause is not absolute. *People v. Wright*, 234 Ill. App. 3d 880, 897, 601 N.E.2d 817, 830 (1992). A defendant has the burden of substantiating such prejudice on the part of the judge which disqualifies him from sitting as the judge in the case. *Wright*, 234 Ill. App. 3d at 897, 601 N.E.2d at 830. The alleged bias or prejudice must be shown to have stemmed from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from participation in the case. *Wright*, 234 Ill. App. 3d at 898, 601 N.E.2d at 830. If the allegations are not sufficient, defendant is not entitled to a hearing before a different judge on the substitution motion. *People v. Johnson*, 159 Ill. 2d 97, 123, 636 N.E.2d 485, 496 (1994).

In this case, defendant refers to the following comment by the trial judge:

"[THE COURT]: Again, the thrust or the main thing in this particular case is there is absolutely, positively no question about who fired the weapon that killed two people and attempted to kill several others ***.

It would be a useless act if, in fact, he was fit for trial and is now fit for trial to retry the matter again because all that estimation and cost where there is no defense it would be raised."

Defendant also notes that the trial court made following comments explaining his ruling:

"[THE COURT]: I was commenting only upon the evidence presented before this court and [*sic*] the original trial in this case.

I've already indicated to Counsel I've already ruled on matters in this case since the remand."

It is apparent that the trial court's comment that there was "no question" regarding the identity of the shooter was based on what the judge learned from participation in the case. The comment regarding a retrial being "useless" was contingent upon the resolution of the fitness issues. That the trial court believed it would not serve judicial economy to retry the case if defendant was fit at the time of the first

trial and on remand does not sufficiently allege pervasive bias or prejudice to warrant a hearing by another judge.

## VII

■ Defendant contends that the trial court denied him his right to due process of law by failing to conduct a jury trial on the fitness issues. There is no constitutional right to a jury at a hearing to determine fitness to stand trial. *People v. Haynes*, 174 Ill. 2d 204, 220, 673 N.E.2d 318, 326 (1996). Defendant cites section 104—12 of the Code of Criminal Procedure of 1963, which provides as follows:

> "Right to Jury. The issue of the defendant's fitness may be determined in the first instance by the court or by a jury. The defense or the State may demand a jury or the court on its own motion may order a jury. However, when the issue is raised after trial has begun or after conviction but before sentencing, or when the issue is to be redetermined under Section 104—20 or 104—27, the issue shall be determined by the court." 725 ILCS 5/104—12 (West 1996).

In this case, the defense did not demand a hearing prior to the initial trial. Accordingly, it appears that the statute provides that the issue *shall* be determined by the court.

Defendant cites *People v. Thomas*, 43 Ill. 2d 328, 253 N.E.2d 431 (1969), *People v. Burson*, 11 Ill. 2d 360, 143 N.E.2d 239 (1957), and *People v. James*, 130 Ill. App. 2d 532, 263 N.E.2d 705 (1970), all of which involved prior versions of section 104—12. The prior statutory law did require that the trial judge impanel a jury for a fitness hearing. See, *e.g.*, *James*, 130 Ill. App. 2d at 533, 263 N.E.2d at 706, quoting Ill. Rev. Stat. 1967, ch. 38 par. 104—2. The current, applicable statute does not so provide.

In sum, the trial court did not err in conducting the fitness hearing without a jury.

## VIII

■ Finally, defendant contends that he was denied effective assistance of counsel, where counsel "boycotted" the retrospective fitness hearing and stated that he slept through part of it. Generally, to prevail on such a claim, a defendant must show that defense counsel's representation fell below an objective standard of reasonableness and so prejudiced the defense as to deny the defendant a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064, (1984). However, this court has not hesitated to reverse where defense counsel refuses to cross-examine witnesses, present any evidence, or make opening or closing statements; at least, this has been the result where there is no showing the defendant consented to

counsel's inactivity. *E.g., People v. Williams*, 192 Ill. App. 3d 304, 308-11, 548 N.E.2d 738, 740-42 (1989). Defendant's consent must be knowing and intelligent. *People v. Hattery*, 109 Ill. 2d 449, 465, 488 N.E.2d 513, 519 (1985).

In this case, Dr. Markos testified that defendant objected to the October 1997 reexamination, stating that he was doing so on advice of counsel. However, the record does not show whether defendant was informed of the potential consequences of this strategy. Thus, we cannot conclude that defendant knowingly and intelligently consented to a "boycott" strategy on remand.

Nevertheless, the record here shows that during the hearing on defendant's then-current fitness, defense counsel cross-examined Dr. Markos regarding defendant's condition *prior to the trial*, particularly whether defendant was suffering from a bipolar disorder in 1994. Indeed, the trial court stated that it would allow the State to explore the question on redirect because defense counsel "opened the door" to it. The rules regarding ineffective assistance do not permit counsel to cross-examine on an issue in one hearing and then complain that he completely failed to subject the issue to adversarial testing during a later hearing, due to counsel's "boycott" of that hearing. Moreover, as noted above, pursuant to *Mitchell*, there is no longer a requirement that a hearing be held, thus negating any prejudice to the defendant.

This is not to say that this court condones attorney Daniel J. Stohr's conduct on remand. Mr. Stohr knew that any order issued outside of the scope of our mandate would be void for lack of jurisdiction. This is not an objection that can be waived; thus, the alleged "boycott" was groundless. Moreover, while the alleged sleeping in this case would be cumulative of counsel's alleged "boycott," Mr. Stohr's cavalier representation that he was sleeping through the questioning of Dr. Markos during the later hearing is deeply disturbing to this court.

One of the cases Mr. Stohr cites on appeal, *Martin v. Rose*, 744 F.2d 1245, 1251-52 (6th Cir. 1984), suggests that a court faced with a groundless "boycott" may seek an express waiver of assistance of counsel from the defendant, use the contempt power or the disciplinary mechanism of the bar. In this case, Mr. Stohr sought a contempt finding. The trial court declined to find him in contempt, but a contempt finding may well have been appropriate in this case. Ultimately, however, Mr. Stohr's conduct does not require a reversal, given the unusual facts and circumstances of this case.

445

For all of the aforementioned reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY and O'BRIEN, JJ., concur.