2023 IL App (1st) 230002

No. 1-23-0002

Opinion filed December 13, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| HAS CAPITAL, LLC; HAS CAPITAL ADVISORS, LLC; HAS CAPITAL INCOME OPPORTUNITY FUND I, LLC; HAS CAPITAL INCOME OPPORTUNITY II, LLC; HAS CAPITAL INCOME OPPORTUNITY FUND, LLC; HASCAP INVESTMENTS, LLC; HASCAP INVESTMENTS TRUST; HASCAP INVESTMENTS TRUST II; HASCAP INTERNATIONAL, LLC; HAS CAPITAL MMA FUND II, LLC; AGRE MHC PLATFORM JV, LLC; AGRE MHC PLATFORM REIT, LLC; AMS FAMILY HOLDINGS, LLC; AGRE MHC TRS, LLC; LINWAY RE, LLC; COLONIAL HOME SALES, LLC; ALPINE RE, LLC; PARADISE RE, LLC; and WEATHERSTONE RE, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 19 CH 11691 |
| THE ILLINOIS SECURITIES DEPARTMENT OF THE SECRETARY OF STATE OF THE STATE OF ILLINOIS, | ) ) ) ) ) | Honorable Thaddeus L. Wilson, |
| Defendant-Appellee. | ) ) | Judge, presiding. |
| (HAS Capital, LLC; HAS Capital Advisors, LLC; HAS Capital Income Opportunity Fund I, LLC; HAS Capital Income Opportunity II, LLC; HAS Capital Income Opportunity Fund, LLC; HASCAP Investments, LLC; | ) ) ) ) ) | |

No. 1-23-0002

HASCAP Investments Trust; HASCAP Investments Trust )
II; HASCAP International, LLC; HAS Capital MMA )
Fund II, LLC; AMS Family Holdings, LLC; and Colonial )
Home Sales, LLC, Plaintiffs-Appellants). )
)

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Justices D.B. Walker and R. Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiffs, HAS Capital, LLC, and 18 other entities (collectively, the HAS entities), filed a complaint seeking a declaratory judgment to quash a subpoena issued to their bank by defendant, the Illinois Securities Department of the Secretary of State (Department). The Department moved for summary judgment, and the circuit court granted summary judgment in favor of the Department.

¶ 2     On appeal, plaintiffs argue that (1) the doctrine of *res judicata* barred the issuance of the subpoena and (2) the subpoena was invalid because its scope was unreasonable and the information it sought was not relevant to the Department's investigation.

¶ 3     For the reasons that follow, we affirm the judgment of the circuit court.[1]

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

¶ 4                                    I. BACKGROUND

¶ 5      In February 2014, plaintiff HAS Capital Advisors, LLC, created plaintiff HAS Capital Income Opportunity Fund I, LLC (Fund), a hedge fund that raised more than $19 million over the next four years. Acting as investment advisors, HAS Capital Advisors, LLC, and other related entities sought to secure investments through the sale of securities in the Fund, including limited liability interests.

¶ 6      In 2019, the Department began investigating whether the Fund and others violated the Illinois Securities Law of 1953 (Act) (815 ILCS 5/1 *et seq.* (West 2018)), by selling unregistered securities in the Fund. The Department's investigation of the financial activities of the Fund and related entities was prompted by information that Fund management may have engaged in "related-party transactions" with Fund insiders—individuals or other entities who controlled the other funds. The Department was aware that such transactions, which can benefit insiders at the expense of investors, can defraud investors if not disclosed and conducted on fair terms.

¶ 7      During its investigation, the Department obtained evidence of at least three such related-party transactions. One transaction involved a loan to Eric Decator, an attorney acting as general counsel for the HAS Capital, LLC, investment vehicles. A second possible loan of $1.7 million was made to Stephen A. Wheeler, HAS Capital, LLC's managing director, chairman, and chief executive officer. And a third loan was made to Adam Peterson, who provided asset valuation and investment analysis services to HAS Capital, LLC.

¶ 8      Besides the related-party transactions, the Department investigated the Fund's failure to provide audited financial statements to investors, per the Fund's written representations in a

placement memorandum. The investigation further focused on the Fund's failure to make a final distribution of assets despite its stated intent to remain active only through March 2019.

¶ 9    In August 2019, the Department served on BMO Harris Bank, which is not a party to this case, a subpoena requesting information and records regarding the identification of accounts maintained or controlled by some of the HAS entities, Wheeler, and Decator, along with the account opening agreements on those accounts. Specifically, the subpoena sought a list of any and all accounts maintained by the bank since January 2014 for seven entities (HAS Capital, LLC; HAS Capital Interests, LLC; HAS Capital Partners, LLC; HAS Capital Advisors, LLC; HASCAP Acquisitions; IIASCAP Investments Trust; and the Fund) and two individuals (Wheeler and Decator). In addition, the subpoena sought a list of accounts for which either Wheeler or Decator were signatories. The subpoena also requested a copy of the opening account agreements for the preceding accounts.

¶ 10    In October 2019, the HAS entities moved the circuit court to quash the subpoena. Between December 2019 and March 2020, the Department moved to strike that motion, arguing that the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2018)), required the HAS entities to file a complaint, not just a motion to quash. Between May and June 2021, the HAS entities filed an amended motion to quash, and the Department moved to strike and dismiss that motion, arguing that the HAS entities again violated the Code by failing to state a cause of action against the Department. In June 2021, the circuit court granted the Department's motion, interpreting the amended motion to quash as a complaint and giving the HAS entities until July 2021 to file an amended complaint.

¶ 11 In July 2021, the HAS entities filed an amended complaint seeking a declaratory judgment, claiming that the Department went "rogue" and that the subpoena had no legitimate purpose. In February 2022, the Department moved for summary judgment, arguing that it was authorized under the Act to issue administrative subpoenas to facilitate its investigations and that the subpoena issued to BMO Harris Bank was valid. The HAS entities responded, arguing in part that a separate determination by the Secretary of State (Secretary) in April 2022 against HAS Capital Advisors, LLC, the Fund, Wheeler, and Keith Cooper (prohibition order) following an administrative hearing precluded the Department from pursuing this subpoena based on *res judicata* principles. The Department replied, arguing that *res judicata* did not apply and the subpoena was proper.

¶ 12 On November 2, 2022, the circuit court granted the Department's motion for summary judgment, concluding that *res judicata* did not bar the subpoena due to a lack of identity between the issues and parties. The circuit court also held that the Department's "contemplated proceedings f[e]ll within its authority under the Act," the scope of the subpoena was reasonable, and the information sought was relevant to the Department's investigation.

¶ 13 The HAS entities appealed.

¶ 14 II. ANALYSIS

¶ 15 This court reviews *de novo* the circuit court's grant of summary judgment. *Williamson v. Evans Nails & Spa Corp.*, 2023 IL App (1st) 220084, ¶ 5. The circuit court's grant of "[s]ummary judgment is appropriate where the pleadings, depositions, admissions, and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." (Internal quotation marks omitted.) *Hawkins v. Capital Fitness, Inc.*, 2015 IL App

(1st) 133716, ¶ 10; see 735 ILCS 5/2-1005 (West 2020). On *de novo* review, this court may affirm the circuit court's grant of summary judgment "on any basis apparent in the record, regardless of whether [it] relied on that basis or whether [its] reasoning was correct." *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 13. This court also reviews *de novo* a circuit court's decision on whether the doctrine of *res judicata* precludes a claim. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 45.

¶ 16    The Act, which the Department administers, protects individuals "who may be induced to invest [their money] in speculative enterprises over which they have little control." *Van Dyke v. White*, 2019 IL 121452, ¶ 47. Given this protective purpose, courts liberally interpret the Act to prevent fraud in the sale of stocks, bonds, and other securities, construing the meaning of a "security" broadly. *Id.*; *Carpenter v. Exelon Enterprises Co.*, 399 Ill. App. 3d 330, 334, 337 (2010) (discussing the Act's "paternalistic" intent to protect unwary investors); *Boatmen's Bank v. Durham*, 203 Ill. App. 3d 921, 926 (1990) (court liberally construes the Act "to protect *** public from deceit").

¶ 17    Relevant here, the Act's antifraud provisions apply to investment advisers, including federally covered investment advisers. 815 ILCS 5/12(J) (West 2020). And the Secretary may suspend, revoke, or deny the registration of both securities firms and individuals and may prohibit the activities of, or fine, firms or individuals that violate the Act. *Id.* §§8(E)(1), 11, 12. To facilitate the ability to determine whether such steps are necessary, section 11 of the Act grants the Secretary the authority to investigate, issue subpoenas, conduct administrative hearings, and refer potential criminal violations to prosecutors. *Id.* § 11(D)(1). The Department is part of the Secretary's office

and, as the Secretary's agent, is authorized under the Act to issue subpoenas and conduct investigations. See *id.* § 2.16 (discussing director of the Department).

¶ 18                                    A. *Res Judicata*

¶ 19     Plaintiffs argue that the Department is barred from prosecuting them for fraud and allegedly engaging in related-party transactions under the doctrine of *res judicata* based on the April 2022 prohibition order issued by the Secretary in the administrative action for fraud against HAS Capital Advisors, LLC, the Fund, Wheeler, and Cooper, who have sought judicial review of that 2022 prohibition order in the circuit court. Plaintiffs argue that *res judicata* extends to matters that could have been decided in the prior administrative action and that the Department already prosecuted claims against those four respondents for the same violations the Department is investigating in the matter at issue in this appeal. According to plaintiffs, *res judicata* applies because the subpoena is a prelude to a barred prospective administrative proceeding. Plaintiffs contend that the only reasonably foreseeable purpose of the Department's issuance of a subpoena would be to bring a subsequent administrative proceeding against the HAS parties it has already acted against, which plaintiffs argue is barred.

¶ 20     According to the record, following administrative proceedings against respondents HAS Capital Advisors, LLC, the Fund, Wheeler, and Cooper, the Secretary issued the prohibition order in April 2022, which adopted the report and recommendation of the hearing officer and found that the four respondents violated certain antifraud provisions of the Act. The Secretary, *inter alia*, permanently prohibited the respondents from offering or selling securities in or from Illinois.

Furthermore, the following statement was included in the analysis of the hearing officer's report and recommendation:

> "The Department also presented evidence regarding related party transactions ***. To the extent the Department presented the evidence to help establish materiality it is unnecessary for that purpose. To the extent it presented the evidence to create additional material omissions, such allegations were not part of the original notice of hearing and, therefore, the Hearing Officer will not consider them as a part or element of any alleged violation of the Act."

¶ 21 This court upholds the circuit court's determination that the doctrine of *res judicata* did not prevent the Department from issuing the subpoena to BMO Harris Bank in furtherance of its related-party transaction investigation of the HAS entities. *Res judicata* facilitates judicial efficiency by "protect[ing] parties from being forced to bear the unjust burden of relitigating essentially the same case." (Internal quotation marks omitted.) *Hayashi*, 2014 IL 116023, ¶ 45. The doctrine "bars a subsequent action between the same parties or their privies involving the same cause of action" and encompasses not just what "was actually decided in the prior action, but also *** those matters that could have been decided." *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 21. A party who invokes *res judicata* has the burden of showing its application. *Hernandez v. Pritikin*, 2012 IL 113054, ¶ 41.

¶ 22 The HAS entities have not shown that *res judicata* applies in this situation to bar the issuance of a subpoena. Although the HAS entities cite *Pedigo v. Johnson*, 130 Ill. App. 3d 392, 394 (1985), for the proposition that "*res judicata* effect affixes to administrative decisions that are

judicial in nature," *Pedigo* did not concern a subpoena. As noted above, *res judicata* bars "a subsequent action." *Richter*, 2016 IL 119518, ¶ 21; see *Crossroads Ford Truck Sales, Inc. v. Sterling Truck Corp.*, 2011 IL 111611, ¶ 56 ("*res judicata* can preclude litigation of causes of action or issues already addressed in an administrative proceeding that is judicial in nature" (internal quotation marks omitted)); *Osborne v. Kelly*, 207 Ill. App. 3d 488, 491 (1991) ("It is well established that *res judicata* can preclude litigation of causes of action or issues already addressed in an administrative proceeding that is judicial in nature."). The issuance of a subpoena is not litigation and does not involve a cause of action or claim for relief. Moreover, the declaratory judgment action here was brought in the circuit court by the HAS entities themselves.

¶ 23   Even assuming that *res judicata* applies in this situation, it has three requirements: "(1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of causes of action; and (3) identity of parties or their privies." *Hayashi*, 2014 IL 116023, ¶ 45. The requirement of a "final judgment" means that, if an appeal or analogous judicial review is still pending, then the doctrine does not apply. See *Relph v. Board of Education of DePue Unit School District No. 103*, 84 Ill. 2d 436, 442-43 (1981) (because judgments "were still subject to the appellate process," including the possibility of review by the Illinois Supreme Court, "they were not to be given *res judicata* effect"); see also *People v. Anderson*, 2015 IL App (2d) 140444, ¶ 26 ("If a judgment is still subject to the appeal process, it cannot be given *res judicata* effect."); *In re Marriage of Lehr*, 317 Ill. App. 3d 853, 860 (2000) (same); *People v. Melka*, 319 Ill. App. 3d 431, 439 (2000) (same). But see *Langone v. Schad, Diamond & Shedden, P.C.*, 406 Ill. App. 3d 820,

834-35 (2010) (recognizing split in authority over whether *res judicata* applies when an appeal is still pending).

¶ 24    In this case, the circuit court correctly concluded that *res judicata* did not bar the Department's issuance of the subpoena to BMO Harris Bank because the second and third elements of the doctrine—the requirement of identical causes of action and identity of parties or privies—were not met. See *Hayashi*, 2014 IL 116023, ¶ 45. Concerning the required subject-matter identity between this action and the prohibition order, the circuit court correctly held that such identity did not exist. As the circuit court noted, the Secretary "expressly declined to decide on the merits whether the respondents violated the Act by engaging in related party transactions." But the Department's investigation in this matter, and the subpoena that it issued in furtherance of that investigation, originated from a concern that the Fund and its insiders were engaged in related-party transactions. Thus, the "identity of causes of action" (*id.*), is absent. On this basis alone, *res judicata* failed.

¶ 25    Even if the Secretary's prohibition order could be interpreted as involving related-party transactions, the circuit court identified a second independent basis that *res judicata* did not apply: the lack of an identity of parties or privies between the two actions. As the circuit court noted, the prohibition order applied to four respondents—Wheeler, Cooper, the Fund, and HAS Capital Advisors, LLC. But neither Wheeler nor Cooper were parties to this case. Indeed, there were 19 different entities that brought this declaratory judgment action. Only two of them overlapped with the respondents barred by the prohibition order: HAS Capital Advisors, LLC, and the Fund. The circuit court therefore correctly concluded that the HAS entities failed to meet their burden of

showing that the 17 remaining entities who were plaintiffs in this action were identical to, or in privity with, the four entities barred by the prohibition order, by virtue of common control, ownership, or some other factor. The HAS entities had ample opportunity in the circuit court and their opening brief on appeal to explain the connection of these different LLCs to clarify the issue of identity, but they have failed to do that.

¶ 26     Even if the HAS entities satisfied both *res judicata* elements discussed above, they did not meet the first requirement—"a final judgment on the merits." *Id.* As the authority above indicates, a judgment that is on appeal cannot be considered final for purposes of *res judicata*. *Relph*, 84 Ill. 2d at 442-43; *Anderson*, 2015 IL App (2d) 140444, ¶ 26; *Lehr*, 317 Ill. App. 3d at 860; *Melka*, 319 Ill. App. 3d at 439. But as the HAS entities concede, the Secretary's prohibition order was the subject of a complaint for administrative review in the circuit court. Administrative review is a form of appellate review. See *Danigeles v. Illinois Department of Financial & Professional Regulation*, 2015 IL App (1st) 142622, ¶ 69 (court on administrative review "may not consider new or additional evidence in making its determination"); *People v. Rodriguez*, 2021 IL App (1st) 200173, ¶ 66 (Ellis, J., specially concurring) (court on administrative review "does not entertain new evidence; it reviews a cold administrative record and hears arguments of counsel").

¶ 27     The Secretary's prohibition order plausibly could be affirmed, reversed, or remanded by the circuit court on administrative review in the coming months. If the circuit court's order is appealed to the reviewing courts, affirmance, reversal, or remand can occur yet again. Because the prohibition order is "still subject to the appellate process," it is not a final judgment for *res judicata* purposes. See *Relph*, 84 Ill. 2d at 442-43; *Lehr*, 317 Ill. App. 3d at 860. And while, as noted, there

is authority to the contrary on the effect of an appeal in this situation (see *Langone*, 406 Ill. App. 3d at 834-35), a key interest of *res judicata* is judicial efficiency (see *Hayashi*, 2014 IL 116023, ¶ 45). But the present fluidity of the prohibition order during its review by the circuit court and potentially two additional layers of judicial review make it far from final and thus an unreliable basis to bar the Department's pursuit of information relevant to its investigation and within its purview. Judicial economy would not be served if the prohibition order were to have preclusive effect and then be reversed.

¶ 28    The HAS entities claim that "[t]he Department cannot dispute that they have already prosecuted claims against certain Plaintiffs for the same violations they are investigating now." But that assertion ignores the circuit court's conclusion that the record unambiguously showed that the prohibition order explicitly stated that it was not considering related-party transactions, distinguishing it from the subpoena.

¶ 29    Further, the HAS entities lack any basis—and cite none—for second-guessing the Department's method of conducting investigations. The purpose of an administrative subpoena is to uncover reasonable and relevant information for an agency investigation. See *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 298 (1981). An administrative hearing, by contrast—which may be the ultimate result of an investigation and subpoena—serves other purposes, including to bar individuals or entities from selling or issuing securities. Because this court's review of an administrative subpoena "is generally limited to *** whether the contemplated agency proceedings are included within the statutory authority, the reasonableness of the demand, and the relevance of the information sought" (*People ex rel. Illinois Department of*

*Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 57), questions about how the Department conducts its investigations are not part of that review (see 815 ILCS 5/11(D)(1) (West 2020) (Secretary has broad power to seek by subpoena anything he deems relevant to an inquiry); *Id.* § 11(B) (Secretary may obtain such information from third parties); *Van Dyke*, 2019 IL 121452, ¶ 47 (courts liberally interpret the Act to facilitate the detection and prosecution of fraud)). The HAS entities speculate that "[t]he limited value of the potential information to be gathered by the Subpoena inherently narrows the potential uses for documents gleaned by the Subpoena," but they have no valid basis for second-guessing the Department's approach to its investigations.

¶ 30    As to the *res judicata* element on parties' identity, the HAS entities argue that "the presence of additional parties to this declaratory judgment action is not an impediment." But that bare assertion, without an explanation of how the 17 other entities in this case were related to the parties barred by the Secretary's prohibition order, fails to meet plaintiffs' burden of showing that the requirements of *res judicata* were met. See *Hernandez*, 2012 IL 113054, ¶ 41. Nowhere in the HAS entities' amended complaint, or in their summary judgment memorandum in the circuit court, did they explain the interconnection, ownership, or relation of the plaintiffs to each other or to the parties that are the subject of the Secretary's prohibition order. If these entities are mirror images of each other, then the HAS entities should have articulated that at some point.

¶ 31    In sum, the circuit court correctly concluded that *res judicata* was inapplicable to this case and thus was not a basis to deny the Department's summary judgment motion.

¶ 32                                 B. Validity of the Subpoena

¶ 33    Plaintiffs also argue that the scope of the subpoena is unreasonable because the Department (1) seeks information from entities other than the Fund even though all alleged related-party transactions are with the Fund itself and (2) has neither alleged specifics regarding plaintiffs' believed wrongdoing nor asked plaintiffs for an explanation for the related-party transactions. Plaintiffs argue that the Department's subpoena is invalid because the information sought is not reasonable in proportion to its relevance. Specifically, plaintiffs contend the subpoena improperly seeks personal banking information that is beyond the reasonable scope of a Department investigation and constitutes an unlawful invasion of privacy. According to plaintiffs, the only evidence the Department presented to support the subpoena is the alleged existence of three related-party transactions, but there is nothing inherently improper in the execution of related-party transactions, and the Department has not even attempted to formulate a substantive objection to those transactions. Plaintiffs argue that this court should weigh the paucity of alleged wrongdoing against the privacy concerns because the subpoena reaches the account information of 19 separate entities and the Department offers no explanation or justification for extending the scope of the subpoena beyond records relating to the Fund.

¶ 34    The Department's ability to seek information via subpoena covers an entity's transactions with Illinois consumers. See *Scott*, 88 Ill. 2d at 298 (discussing related powers of Illinois Attorney General). Subpoenas sought in this context allow the Department to fulfill its statutory duty under the Act, giving it the ability to "ascertain[ ] the truthfulness and accuracy" of wide-ranging activities, including "the fairness of" the entity's "dealings with Illinois residents." *Id.*

¶ 35    In deciding the validity of an administrative subpoena, courts consider (1) the constitutionality of the statute in question, (2) the statutory authority for the contemplated agency proceedings, (3) the reasonableness of the subpoena demand, and (4) the relevance of the information at issue. *Id.* at 296. The HAS entities do not challenge the first and second factors— *i.e.*, the Act's constitutionality and the statutory authority for the contemplated agency proceedings. And as explained below, the circuit court correctly determined that the Department's subpoena satisfied the two remaining criteria. For that reason, the subpoena was valid and enforceable, entitling the Department to summary judgment.

¶ 36    Within its subpoena, the Department requested (1) the front and back of all checks drawn on the Fund's account in excess of $1000, (2) a list of wires generated to or from the Fund's account, (3) all deposits and supporting documents regarding the Fund's account, and (4) monthly statements for the Fund's account. The Department also requested that BMO Harris Bank identify accounts that were maintained or controlled by Wheeler and Decator and provide the account opening agreements for those accounts to determine who was authorized to transact business with the accounts. The only transactional bank history that the subpoena requested was for the Fund, with the account number ending in -4424. The Department requested documents dating back to January 1, 2014.

¶ 37                     1.Statutory Authority for the Investigation

¶ 38    Although the HAS entities do not challenge the statutory authority aspect of the Department's subpoena, we discuss this factor in our analysis because it implicates the two factors challenged by the HAS entities—*i.e.*, reasonableness and relevance.

¶ 39    Section 11(D)(1) of the Act states in relevant part that the Department may "require, by subpoena or other lawful means" that the subpoena recipient produce "any books and records, papers, or other documents." 815 ILCS 5/11(D)(1) (West 2020). And the scope of that authority broadly extends to materials that the Department "deems relevant or material to the inquiry." *Id.* The Department may seek to obtain this range of information through or from third parties that are not the subject of an investigation. *Id.* § 11(B) (Secretary "may secure information or books and records from or through others").

¶ 40    The Act also authorizes the Department to initiate enforcement actions against individuals and entities that violate the Act. See, *e.g.*, *id.* § 11(E)(3), (F)(1), (2), (H) (authorizing the Secretary to prohibit investment advice if the Act may be violated or investors will suffer losses). And relatedly, section 12 of the Act prohibits fraudulent and deceptive conduct. See *id.* § 12(F), (J). These provisions collectively allow the Department to investigate and issue subpoenas to any entity with relevant information concerning potential violations of the Act, including fraudulent and deceptive conduct. Because such violations may not become evident until the issuance of the subpoenas and the return of the requested information, courts recognize the broad investigatory powers inherent in administrative subpoenas. See *Scott*, 88 Ill. 2d at 298 (recognizing that issuer of subpoena "cannot know in advance what its investigation may produce").

¶ 41    Regarding potential problems inherent in related-party transactions, the Act allows the Department to request records from related parties. 815 ILCS 5/11(A)(2), (D)(1) (West 2020) (Secretary may seek information from "any person, directly or indirectly, controlling or controlled by the issuer, or any person under direct or indirect common control with the issuer" of securities).

In this realm too, the Department has broad authority to conduct investigations and issue subpoenas. See *id.* § 11.

¶ 42 Taken together, these sources of authority validate the subpoena at issue here. Given its wide investigatory authority, the Department followed the Act when it issued the subpoena. The investigation originated out of a concern that investors in the Fund were not receiving information about how the Fund was investing their monies. And the Fund continued to hold the assets beyond the liquidation date, furthering the need for the Department's review of the BMO Harris Bank accounts.

¶ 43 The Department's review of the BMO Harris Bank accounts covered by the subpoena could enable the Department to determine if the Fund misused investments through related-party transactions, including loans or payments to insiders, possible fraudulent and deceptive conduct, and other potentially impermissible activities. Given these concerns, the Department crafted its subpoena to discover any related-party transactions—potentially improper transactions among fund insiders or entities controlled by the Fund. These matters fell squarely within the Department's antifraud authority under the Act.

¶ 44                                      2. Reasonable Scope

¶ 45 The subpoena met the next factor because the information that it sought was reasonable, given the Department's concerns about the Fund and related entities' activities. See *Scott*, 88 Ill. 2d at 296. An administrative subpoena is valid in scope as "measured by the relevance of the information sought to the problem under investigation." (Internal quotation marks omitted.) *Heritage House of Glamour, Inc. v. Attorney General*, 179 Ill. App. 3d 336, 339 (1989) (affirming

circuit court's determination that subpoena was not overbroad because it sought information "reasonably related" to show whether party was engaged in unfair or deceptive practices).

¶ 46    The information sought by the subpoena here was reasonable, given the problem at issue— *i.e.*, the possibility that the Fund and related entities misused investors' monies by conceivably making inside party loans and engaging in other potentially improper related-party transactions. The subpoena was crafted within reasonable limits to produce information about the Fund and related entities' banking transactions, including the use and potential misuse of investors' monies. The information sought in the subpoena could also show whether the funds were being used for their intended purposes or in ways forbidden by the Act. That includes whether Fund managers engaged in improper related-party transactions and whether those transactions were adequately and truthfully disclosed to investors. Such transactions can perpetrate fraud if not disclosed or made on fair terms.

¶ 47    Moreover, the subpoena was narrowly tailored because it sought transaction-level records for a single fund account (ending in the number "4424"), enabling the Department to assess possible related-party transactions. Further demonstrating its reasonably narrow reach, the subpoena excluded any records for the entities outside of the Fund, except for an isolated request for account opening agreements—*i.e.*, a request that BMO Harris Bank identify the persons or entities with authority over this account.

¶ 48    The HAS entities' arguments on this point lack merit as well. First, they complain that the Department had some affirmative obligation to reveal and outline its investigative goals and purposes. In particular, the HAS entities assert that the Department has not specified "even the

suggestion of wrongdoing by Plaintiffs" and that the Department's arguments in support of summary judgment were "remarkably lacking in any substantive information" and offered "[n]o evidence or allegation of any fraud in connection with related party transactions." But the HAS entities have offered no legal support for the notion that the Department was required to reach some agreement with parties under investigation before it could seek information relevant to an investigation or that it must reveal its confidential sources.

¶ 49    Beyond these suggestions that a subpoena is limited in scope to predetermined and fixed conceptions about a complex investigation, the HAS entities appear to believe that, before a subpoena can issue, the Department must "establish [a] record of wrongdoing." The HAS entities also assert that the Department has "offered no allegations" of such wrongdoing. But the HAS entities have it exactly backward: a subpoena aids in an investigation, helps reveal potential wrongdoing, and may clarify the statutory provisions that have been violated. See *Scott*, 88 Ill. 2d at 298 (issuer of subpoena need not definitively predict or "know in advance what its investigation may produce"). A subpoena, indeed, may define or reshape an investigation. *Id.* Given that, the Department's investigative and subpoena powers under the Act—which the HAS entities do not challenge—are broad and liberally interpreted by courts. *Van Dyke*, 2019 IL 121452, ¶ 47; *Boatmen's Bank*, 203 Ill. App. 3d at 926.

¶ 50    The HAS entities also assert that "[t]he most problematic aspect of the Subpoena *** is its demand for personal account information for Plaintiffs Wheeler and Decator," which is protected by a "heightened privacy concern." The record, however, shows that the Department was not seeking personal bank account information. Instead, the subpoena sought to identify "[a] list of"

any and all accounts for HAS Capital, LLC, six other entities, and Wheeler and Decator, along with the account opening agreements for any such identified accounts.

¶ 51     This information was critical to enabling the Department to identify related-party transactions that could be fraudulent. The subpoena was therefore reasonable in scope and not excessive for the purpose of the relevant inquiry. See *A.G. Edwards, Inc. v. Secretary of State*, 331 Ill. App. 3d 1101, 1107 (2002). And the HAS entities' fear that the subpoena somehow could expose private information to public view is unfounded. The Department sought information for investigative purposes, not to publicize that information. If legal filings or disclosures become necessary, protective orders and the safeguarding of confidentiality are feasible.

¶ 52     Further, the HAS entities' reliance on *A.G. Edwards* is misplaced. To be sure, *A.G. Edwards* expressed concern that the investigators there overreached by, among other things, seeking personal banking information, including for an account held jointly by married individuals when one of the spouses was not the focus of the investigation. *Id.* at 1111. The overbreadth of that request "violated [the] right to privacy." *Id.* By contrast, no similar transaction information was sought here except in one instance: for the Fund. Plaintiffs also claim that the Department was acting improperly, like the investigators in *A.G. Edwards*, because the Department has "not even attempted to exhaust the information available." That statement, however, lacks any support in the record. Moreover, the Department responds that the record shows that the information already in the Department's possession alerted it to the pressing need for the subpoena.

¶ 53 In sum, the subpoena was reasonable because it was narrowly tailored to produce information to assist the Department in determining whether the HAS entities engaged in improper activity, which was within its statutory authority to investigate.

¶ 54                  3. Relevance of the Information Sought

¶ 55 As explained, the scope of the subpoena was reasonable, given the Department's concern about related-party transactions, potentially fraudulent conduct, and more. For the same reasons that the subpoena was reasonable, it was also relevant to the Department's investigation. See *Scott* 88 Ill. 2d at 296.

¶ 56 Overall, because the subpoena fell within the Department's antifraud authority, was reasonable, and was relevant to its investigation, there was no disputed issue of material fact about the validity of the subpoena. Given that, the circuit court's grant of summary judgment in favor of the Department was proper.

¶ 57                  III. CONCLUSION

¶ 58 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 59 Affirmed.

No. 1-23-0002

---

*HAS Capital, LLC v. Illinois Securities Department of the Secretary of State*,
**2023 IL App (1st) 230002**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-CH-11691; the Hon. Thaddeus L. Wilson, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Harris L. Kay and William E. Walsh, of Davis Wright Tremaine LLP, of Chicago, for appellants. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Evan Siegel, Assistant Attorney General, of counsel), for appellee. |

---